**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HERITAGE FOUNDATION., <br> 214 Massachusetts Ave. N.E. <br> Washington, D.C.  20002 <br><br> MIKE HOWELL <br> 214 Massachusetts Ave. N.E. <br> Washington, D.C.  20002 <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY <br> 2707 Martin Luther King Jr., Ave., S.E. <br> Washington, D.C.  20528 <br><br> *Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 22-cv-2298 |

## <u>COMPLAINT AND PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiffs THE HERITAGE FOUNDATION and MIKE HOWELL (collectively "Heritage")

for their complaint against Defendant DEPARTMENT OF HOMELAND SECURITY ("DHS")

allege on knowledge as to Plaintiffs, and on information and belief as to all other matters, as

follows:

1.       This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, to compel the production of records related to communications DHS had with outside

groups in developing a memorandum issued by DHS Secretary Alejandro N. Mayorkas on

September 30, 2021 entitled *Guidelines for Enforcement of Civil Immigration Law* ("Mayorkas

Memo").

2.      The Mayorkas Memo is immensely controversial.  DHS views it as simply continuing a tradition of setting forth policies and priorities for the exercise of prosecutorial discretion.  DHS states the Mayorkas Memo is amply supported by data and empirical insights. The Administration's opponents view it very differently.  They state Congress mandated detention of certain criminal aliens upon their release from criminal custody through removal. Same for aliens during a "removal" period.  But they read the Mayorkas Memo to dispense with these mandatory requirements.  And they believe the Mayorkas Memo is arbitrary and capricious.  So is the Guidance business as usual or a suspending proclamation that would make James II proud?

3.      That is a question the FOIA Request that is the subject of this lawsuit seeks to assist in answering by providing transparency on many key points underlying the creation of the Mayorkas Memo.  Who influenced its creation?  What did they say?  To whom did they present their position?  What data did DHS rely on and where did the data originate?  These are the questions this lawsuit seeks to help answer.

### PARTIES

4.      Plaintiff The Heritage Foundation is a Washington, D.C.-based nonpartisan think tank with a national and international reputation whose mission is to "formulate and promote public policies based on the principles of free enterprise, limited government, individual freedom, traditional American values, and a strong national defense."  Heritage Foundation, *About Heritage*, https://www.heritage.org/about-heritage/mission (last visited Aug. 3, 2022). Heritage is a not-for-profit section 501(c)(3) organization that engages in substantial dissemination of information to the public.  Heritage operates a national news outlet, *The Daily Signal*.

5.      Plaintiff Mike Howell heads the Heritage Foundation's Oversight Project and is

an author for *The Daily Signal*.  The Oversight Project is an initiative aimed at obtaining

information via Freedom of Information Act requests and other means in order to best inform the

public and Congress for the purposes of Congressional oversight.  The requests and analysis of

information is informed by Heritage's deep policy expertise.  For example, former Acting

Customs and Border Protection Commissioner Mark Morgan and former Acting Immigration

and Customs Enforcement Director Tom Homan are Visiting Fellows with The Heritage

Foundation and draw on their experience and expertise to analyze information.  They also use

their broad public engagement to inform the general public.

6.      Defendant DHS is a federal agency of the United States within the meaning of

5 U.S.C. § 552(f)(1) whose mission statement is "[w]ith honor and integrity, we will safeguard

the American people, our homeland, and our values."  *Department of Homeland Security, About

DHS*, https://www.dhs.gov/mission (last visited Aug. 3, 2022).

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) because this

action is brought in the District of Columbia and 28 U.S.C. § 1331 because the resolution of

disputes under FOIA presents a federal question.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant

DHS's principal place of business is in the District of Columbia.

## FACTUAL BACKGROUND

9.      On January 20, 2021, Acting DHS Security David Pekoske issued a

memorandum entitled *Review of Interim Revision to Civil Immigration Enforcement and*

*Removal Policies and Priorities* (Jan. 20, 2021) ("Pekoske Memo").  The Pekoske Memo

summarized its content as follows:

> This memorandum directs Department of Homeland Security components to conduct a review of policies and practices concerning immigration enforcement.  It also sets interim policies during the course of that review, including a 100-day pause on certain removals to enable focusing the Department's resources where they are most needed.  The United States faces significant operational challenges at the southwest border as it is confronting the most serious global public health crisis in a century.  In light of those unique circumstances, the Department must surge resources to the border in order to ensure safe, legal and orderly processing, to rebuild fair and effective asylum procedures that respect human rights and due process, to adopt appropriate public health guidelines and protocols, and to prioritize responding to threats to national security, public safety, and border security.

Pekoske Memo at 1.  The 100-day pause on most removals fulfilled a campaign pledge by

President Joseph R. Biden.  *Town Hall with Fromer Vice President Joe Biden, Presidential*

*Candidate.,* CNN Live Event/Special., CNN Transcript, (Feb. 20

2020),  https://transcripts.cnn.com/show/se/date/2020-02-20/segment/03 (last visited Aug. 3,

2022)

      10.      The Pekoske Memo provided additional information on the review to be

undertaken by the by the Office of the Secretary:

> The Chief of Staff shall coordinate a Department-wide review of policies and practices concerning immigration enforcement.  Pursuant to the review, each component shall develop recommendations to address aspects of immigration enforcement, including policies for prioritizing the use of enforcement personnel, detention space, and removal assets; policies governing the exercise of prosecutorial discretion; policies governing detention; and policies regarding interaction with state and local law enforcement.  These recommendations shall ensure that the Department carries out our duties to enforce the law and serve the Department's mission in line with our values.  The Chief of Staff shall provide recommendations for the issuance of revised policies at any point during this review and no later than 100 days from the date of this memo.

      11.      The Pekoske Memo's section setting "priorities" began by noting that "[d]ue to

limited resources, DHS cannot respond to all immigration violations or remove all persons

unlawfully in the United States.  Rather, DHS must implement civil immigration enforcement

based on sensible priorities and changing circumstances.  DHS's civil immigration enforcement priorities are protecting national security, border security, and public safety."  *Id.* at 2.  The Pekoske Memo also provided that the Acting Director of Immigrations and Customs Enforcement ("ICE") would issue a memorandum providing further Guidance.  *Id.* at 3.

12.     Texas immediately challenged the Pekoske Memo's 100-day pause on certain removals and sought a Temporary Restraining Order ("TRO").  *See Texas v. United States*, 515 F.Supp.3d 627 (W.D. Tex. 2021).  The District Court promptly granted the TRO, finding that the Pekoske Memo's 100-day pause on certain removals was contrary to law and arbitrary and capricious.  *Id.* at 633–35, 637.  The District Court later entered a preliminary injunction on the same grounds. *Texas v. United States*, 524 F.Supp.3d 598 (S.D. Tex. 2021).  The Government did not appeal.

13.     On February 18, 2021, Acting ICE Director Tae D. Johnson issued a memorandum entitled *Interim Guidance:  Civil Immigration Enforcement and Removal Priorities* (Fe. 16, 2021) ("ICE Memo").  The ICE Memo set forth three categories of "criteria defining cases that are presumed to be priorities."  *Id.* at 4.  They follow:  "Priority Category 1: National Security"; "Priority Category 2:  Border Security"; "Priority Category 3:  Public Safety." *Id.* 4–5.  The ICE Memo enjoins that "[e]nforcement and removal actions that meet the criteria . . . are presumed to be a justified allocation of ICE's limited resources."  *Id.* at 3. Actions that do not meet these criteria, however, required preapproval from a Field Office Director or Special Agent in Charge.  *Id.* at 6.

14.     Texas, joined by Louisiana, sued.  They alleged that the ICE Memo's enforcement priorities were effectively mandatory and clashed with Congress's priorities in "8 U.S.C. §§ 1226(c) and 1231(a)(2), which provide that the Government 'shall' detain certain aliens when they are released from custody or during their removal period, respectively." *Texas*

*v. United States*, 555 F.Supp.3d 351, 362 (S.D.Tex. 2021) (subsequent history omitted).  The

District Court granted a preliminary injunction, finding that the ICE Memo:  (1) was contrary to

8 U.S.C. §§ 1226(c) and 1231(a)(2); (2) failed to comply with the Administrative Procedure Act

("APA")'s requirement of notice and comment; and (3) was arbitrary and capricious.  *Id.* at 441.

15.     The Government appealed.  A panel of the Fifth Circuit stayed the preliminary

injunction in part.  *Texas v. United States*, 14 F.4th 332 (5th Cir. 2021).  That partial stay was

then vacated by the *en banc* court.  *Texas v. United States*, 24 F.4th 407 (5th Cir. 2021) (en banc)

(mem.).[1]

16.     Subsequent to the entry of the preliminary injunction, the Government filed its

Administrative record in the District Court.  Notice of Serv. of Admin. Rec., *Texas v. United

States*, No. 6:21-cv-0016 (S.D. Tex. Sept. 8, 2021) (ECF No. 99).  The underlying documents

were not electronically filed, but the pleading reveals multiple communications with non-

governmental organizations who advocate "open-border" policy preferences which apparently

influenced the ICE Memo's drafting.  *Id.*  No such communications are listed with these groups'

ideological counterparts.[2]

17.     On September 30, 2021, DHS Secretary Alejandro N. Mayorkas issued

*Guidelines for the Enforcement of Civil Immigration Law* (Sept. 30, 2021) ("DHS 'Guidance'")

"to better focus the Department's resources on the apprehension and removal of noncitizens who

are a threat to our national security, public safety, and border security and advance the interests

of justice by ensuring a case-by-case assessment of whether an individual poses a threat."  DHS

---

[1]  Several other lawsuits challenging the ICE Memo were rejected on procedural grounds.  *See, e.g.*, *Florida v. United States*, 540 F.Supp.3d 1144 (M.D. Fla. 2021) (ICE memo not subject to judicial review), *vacated as moot*, No. 21-11715, 2021 WL 5910702 (11th Cir. Dec. 14, 2021).
[2]  This likely indicates either that those groups did not communicate with ICE on this issue or that ICE did not rely upon those communications in formulating the ICE Memo.

Press Release, *Secretary Mayorkas Announces New Immigration Enforcement Priorities* (Sept. 30, 2021), *found at* https://www.dhs.gov/news/2021/09/30/secretary-mayorkas-announces-new-immigration-enforcement-priorities (last visited Aug. 3, 2022).

18.     DHS touted that the Mayorkas Memo was the product of extensive external:  "In the last six months, Secretary Mayorkas held multiple engagements with the U.S. Immigration and Customs Enforcement (ICE) workforce and leadership across the country, as well as with a range of stakeholders including law enforcement, civic, and community leaders to inform the new guidance."  *Id.*

19.     The Mayorkas Memo is highly controversial and was immediately challenged by multiple States on the same grounds on which they challenged the ICE Memo.

20.     The Mayorkas Memo is currently vacated on the grounds that it is contrary to law, violates the APA's requirement of notice and comment, and for the third iterative rule in a row is arbitrary and capricious.  *See Texas v. United States*,__F.Supp.3d.__, No. 6:21-cv-00016, 2022 WL 2109204 (S.D. Tex. June 10, 2022) (vacating Mayorkas Memo after trial on merits), *stay pending appeal denied*, __F.4th__, No. 22-40367, 2022 WL 2466786 (5th Cir. July 6, 2022), *stay pending appeal denied, cert. before judgement granted*, No. 22A17 (S.Ct. July 21, 2022) (mem.).[3]

21.     The Mayorkas Memo begins by explaining that DHS must exercise substantial prosecutorial discretion in the civil enforcement of immigration laws because of resource limitations, "[t]herefore, we need to exercise our discretion and determine whom to prioritize for

---

[3]  *But see Arizona v. Biden*, __F.4th__, No. 22-3272, 2022 WL 2437870 (6th Cir. July 5, 2022), *rev'g*, __F.Supp.3d__, No. 3:21-cv-314, 2022 WL 839672 (S.D. Ohio Mar. 22, 2022) (preliminarily enjoining Mayorkas Memo as contrary to law and arbitrary and capricious).

immigration enforcement action." *Id.* at 2.[4]  The Mayorkas Memo continues, "[w]e will prioritize for apprehension and removal noncitizens who are a threat to our national security, public safety, and border security." *Id.* at 4.

22.     Within the "Threat to Public Safety" priority, "aggravated felons" are no longer presumptively subject to enforcement action and detention.  *Texas*, 2002 WL 2109204, at *9.  Rather, "[w]hether a noncitizen poses a current threat to public safety is not to be determined according to bright lines or categories.  It instead requires an assessment of the individual and the totality of the facts and circumstances."  Mayorkas Memo at 3.  Thus, a "noncitizen" who illegally enters the United States and then rapes and murders a 10-year old is not presumptively subject to detention; the "fact of conviction alone" is not sufficient.  *Id.* at 4.

---

[4]  In vacating the Mayorkas Memo the Southern District of Texas found:  "And on this point about insufficient resources and limited detention capacity, the Court finds that the Government has not acted in good faith.  Throughout this case, the Government has trumpeted the fact that it does not have enough resources to detain those aliens it is required by law to detain.  The Government blames Congress for this deficiency.  At the same time, however, the Government submitted two budget requests in which it asks Congress *to cut* those very resources and capacity by 26%. (F.F. No. 16).  Additionally, the Government has persistently underutilized existing detention facilities.  (F.F. No. 17).  To say that this is incongruous is to say the least."  *Texas*, 2022 WL 2109207, at *30.  In denying a stay pending appeal, the Fifth Circuit wrote:  "The district court found that DHS's reliance on the excuse of 'insufficient resources and limited detention capacity' was not in good faith.  While complaining that Congress has not provided sufficient resources to detain aliens as required by law, DHS simultaneously submitted 'two budget requests [for 2023] in which it ask[ed] Congress to cut [its] resources and capacity by 26%.'  Additionally, since 2021, DHS has 'persistently underutilized existing detention facilities.  We further note the oddity that DHS emphasizes 'limited resources' as its main defense of a rule that increases the complexity of its purportedly already-overwhelmed agents' jobs.  For example, the Final Memo instructs that, before pursuing enforcement, personnel should, 'to the fullest extent possible, obtain and review the entire criminal and administrative record and other investigative information to learn of the totality of the facts and circumstances of the conduct at issue.'  But prior to the Final Memo, personnel could simply rely on an order of removal or a qualifying criminal conviction.  As the district court observed, DHS is 'in effect . . . making it harder to comply with the statutory mandate it complains it doesn't have the resources to comply with.'  *Texas*, 2022 WL 2466786, at *4 n.5 (alternations and omissions in original).

23.     While the DHS Guidance states it does not confer any rights (*id.* at 7), it contains

a provision hitherto unknown to immigration enforcement:  "We will work to establish a fair and

equitable case review process to afford noncitizens and their representatives the opportunity to

obtain expeditious review of the enforcement actions taken" (*id.* at 6).

24.     The Administrative Record in Texas' and Louisiana's challenge provides some

insight into whom Secretary Mayorkas consulted when creating the DHS "Guidance."  Def. Not.

of Corrected Admin. Rec., *Texas v. United States*, No. 6:21-cv-00016 (S.D. Tex. Jan 5, 2022)

(ECF No. 145).  But it also raises a great many questions.

25.     Take for example, a document entitled *Stakeholder Outreach in Furtherance of

Department Civil Immigration Enforcement Guidance* (Sept. 17, 2021) ("Outreach Memo")

which summarizes a series of DHS "listening sessions" with a variety of outside groups.  The

Outreach Memo raises as many questions as it answers.

26.     First, the Outreach Memo does not appear to be a complete list of all the entities

that held meetings with DHS regarding the Mayorkas Memo.  It only covers "listening

sessions"—other types of discussions between DHS and outside groups likely go under a

different name.  Moreover, even confined to its own terms of only "listening sessions," it is not

exhaustive.  *Id.* at 1 ("[w]e have conducted outreach with, *among others*" (emphasis added)).

Who else did DHS meet with?  Why does the Outreach Memo lack a complete list of groups

contacted during DHS's "outreach" concerning the Mayorkas Memo?[5]

27.     Second, the Outreach Memo provides little guidance on key details of each

specific "listening session."  Who were they with?  How long were they?  There is a large

---

[5]  Plaintiffs do not suggest at this time that the Administrative Record was legally deficient.
They simply suggest it does not answer the important questions for which Plaintiffs' FOIA
Request seeks answers.

difference between participating in a session with numerous other outside groups with mid-level

DHS staff for an hour, and a private hour-long meeting with the Secretary himself.  The

Outreach Memo itself begs these questions, listing entities who are "*among* other groups"

Secretary Mayorkas personally met with.  *Id.* at 1 (emphasis added).  Why the incomplete list?

How long was each meeting?  Who was present?

28.     Third, the Outreach Memo is not written as notes of meetings or a summary note

of multiple meetings.  Instead, it summarizes only that which transpired on certain select issues,

such as "common themes" (*id.* at 2), "'hard questions'" (*id.* at 4), and "'anterior' or

'foundational' questions" (*id.* at 5).

29.     Records underlying documents, such as the Outreach Memo, almost certainly

exist and would provide clarity on these important points.

## PLAINTIFF'S FOIA REQUEST

30.     On January 10, 2022, Plaintiffs transmitted a FOIA request to DHS via PALS.

FOIA Request 2022-HQFO-00424 (Jan. 10, 2022) (the "Request") (Ex. 1).  The Request began

by providing a brief background:

> A September 30, 2021 release titled *Secretary Mayorkas Announces New Immigration Enforcement Priorities* (available at https://www.dhs.gov/news/2021/09/30/secretary-mayorkas-announces-new-immigration-enforcement-priorities) states "In the last six months, Secretary Mayorkas held multiple engagements with the U.S. Immigration and Customs Enforcement (ICE) workforce and leadership across the country, as well as with a range of stakeholders including law enforcement, civic, and community leaders to inform the new guidance."

Request at 1.

31.     The call of the Request sought:

1.  Documents sufficient to demonstrate the names of all stakeholders that Secretary Mayorkas or staff in his office had engagements with, as referenced in the press release.

2.  All meeting agendas, calendar information, and notes from the aforementioned engagements.

3.  All attendance information concerning the engagements.

4.  All emails between the Secretary's office and the stakeholder organizations during 2021.

Request at 1.

32.     The Request also sought a fee waiver based on Heritage's status as a non-profit and the fact that a purpose of the Request was to allow Plaintiffs to gather information on a matter of public interest for use by (among other things) authors of its publication, *The Daily Signal*, which is a major news outlet.  *Id.* at 3–4.[6]

### DHS's Failure to Adhere to Statutory Timelines

33.     The PAL system reveals the Request was received on the same day it was sent. PAL Record FOIA Request 2022-HQFO-00424 (Ex. 2).  A fee waiver was granted.  *Id.*  There is no finding of "exceptional circumstances."  *Id.*

34.     20 working days from January 10, 2022 is February 8, 2022.

### FIRST CLAIM FOR RELIEF
### Violation FOIA, 5 U.S.C. §552
### Failure to Conduct Adequate Searches for Responsive Records.

35.     Plaintiffs re-allege paragraphs 1–34 as if fully set out herein.

36.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration"  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).  Secretary of Homeland Security Alejandro N. Mayorkas has

---

[6]  The Request also sought expedited processing which was denied and is not at issue here.

testified that "[o]ne of the hallmarks of our department is openness and transparency,"[7] and

"[w]e pride ourselves on responsiveness."[8]

37.     Plaintiffs properly requested records within the possession, custody, and control of Defendant.

38.     Defendant is subject to FOIA and therefore must make reasonable efforts to search for requested records.

39.     Defendant has failed to promptly review agency records for the purpose of locating and collecting those records that are responsive to Plaintiffs' FOIA Request.

40.     Defendant's failure to conduct searches for responsive records violates FOIA and the DHS regulations.

41.     Plaintiffs have a statutory right to the information they seek.

42.     Defendant is in violation of FOIA.

43.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied information to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

44.     Plaintiffs have no adequate remedy at law.

45.     Plaintiffs have constructively exhausted their administrative remedies.

---

[7] *Oversight of the Department of Homeland Security:  Hearing Before the H. Comm on Jud.*, 117th Cong., CQ Transcript, at *27 (Apr. 28, 2022).
[8] *A Review of the Fiscal Year 2022 Budget Request for the Department of Homeland Security: Hearing Before the H. Comm. Homeland Sec.*, 117th Cong. 47 (June 17, 2021).

## SECOND CLAIM FOR RELIEF
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

46.     Plaintiffs re-allege paragraphs 1–45 as if fully set out herein.

47.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration"  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).  Secretary of Homeland Security Alejandro N. Mayorkas has testified that "[o]ne of the hallmarks of our department is openness and transparency,"[9] and "[w]e pride ourselves on responsiveness."[10]

48.     Plaintiffs properly requested records within the possession, custody, or control of Defendant.

49.     Defendant is subject to FOIA, and therefore must release to a FOIA requester any non-exempt records and provide a lawful reason for withholding any records.

50.     Defendant is wrongfully withholding non-exempt records requested by Heritage by failing to produce any records responsive to Plaintiffs' FOIA Request.

51.     Defendant is wrongfully withholding non-exempt-agency records requested by Plaintiffs by failing to segregate exempt information in otherwise non-exempt records responsive to Plaintiffs' FOIA Request.

52.     Defendant's failure to provide all non-exempt responsive records violates FOIA and DHS regulations.

---

[9]  *Oversight of the Department of Homeland Security:  Hearing Before the H. Comm on Jud.*, 117th Cong., CQ Transcript, at *27 (Apr. 28, 2022).
[10]  *A Review of the Fiscal Year 2022 Budget Request for the Department of Homeland Security: Hearing Before the H. Comm. Homeland Sec.*, 117th Cong. 47 (June 17, 2021).

53.     Plaintiffs have a statutory right to the information they seek.

54.     Defendant is in violation of FOIA.

55.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied information to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

56.     Plaintiffs have no adequate remedy at law.

57.     Plaintiffs have constructively exhausted their administrative remedies.


**WHEREFORE** as a result of the foregoing, Plaintiffs pray that this Court:

A.     Order Defendant to conduct a search or searches reasonably calculated to uncover all records responsive to Plaintiffs' FOIA Request;

B.     Order Defendant to produce, within twenty days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to Plaintiffs' FOIA Request and indexes justifying the withholding of any responsive records withheld in whole or in part under claim of exemption;

C.     Enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiffs' FOIA Request;

D.     Retain jurisdiction over this matter as appropriate;

E.     Award Plaintiffs their costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 522(a)(4)(E); and

F.     Grant such other and further relief as this Court may deem just and proper.

Dated: August 3, 2022                    Respectfully submitted,


                                         /s/ Samuel Everett Dewey
                                         SAMUEL EVERETT DEWEY
                                         (No. 999979)
                                         Chambers of Samuel Everett Dewey, LLC
                                         Telephone:  (703) 261-4194
                                         Email:  samueledewey@sedchambers.com

                                         ROMAN JANKOWSKI
                                         (No. 975348)
                                         The Heritage Foundation
                                         Telephone:  (202) 489-2969
                                         Email:  Roman.Jankowski@heritage.org

                                         *Counsel for Plaintiffs*