UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HERITAGE FOUNDATION, et al.,

    *Plaintiffs*,

         v.

U.S. DEPARTMENT OF HOMELAND
SECURITY,

    *Defendant*.

Civil Action No.: 22-2298 (JMC)

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO
## PLAINTIFF'S MOTION TO COMPEL

**TABLE OF CONTENTS**

BACKGROUND .................................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.   The Court Should Exercise Its Broad Discretion in Favor of the Agency and Deny
     Plaintiff's Motion to Compel. ............................................................................... 3

II.  FOIA Does Not Require Production from Agencies Within 20 or 30 days.................... 8

III. Plaintiff is Not Entitled to this Extraordinary Relief ...................................................... 9

IV.  Applying Plaintiff's Requested Processing Rate Would Be Detrimental to Other
     Requesters and the Public ................................................................................... 11

CONCLUSION................................................................................................................. 13

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                    <u>**Page(s)**</u>

*Am. Ctr. for L. & Just. v. Dep't of State,*
249 F. Supp. 3d 275 (D.D.C. 2017) ............................................................................... 9

*American Center for Law & Justice v. Department of Homeland Security,*
Civ. A. No. 21-1364 (TNM), 2021 WL 5231939 (D.D.C. Nov. 10, 2021) ........................ 10-11

*Baker v. Consumer Fin. Prot. Bureau,*
Civ. A. No. 18-2403 (CKK), 2018 WL 5723146 (D.D.C. Nov. 1, 2018) ................................. 13

*Chaverra v. Immigr. & Customs Enf't,*
Civ. A. No. 18-0289 (JEB), 2020 WL 7419670 (D.D.C. Nov. 5, 2020) ...................................... 7

*Citizens for Resp. & Ethics in Wash. ("CREW") v. FEC,*
711 F.3d 180 (D.C. Cir. 2013) ............................................................................................. 4, 9

*Colbert v. FBI,*
Civ. A. No. 16-1790, 2018 WL 6299966 (D.D.C. Sept. 3, 2018) ........................................ 3, 4, 7

*Daily Caller News Found. v. FBI,*
387 F. Supp. 3d 112 (D.D.C. 2019) ................................................................................... 7, 10

*Daily Caller v. Dep't of State,*
152 F. Supp. 3d 1 (D.D.C. 2015) ....................................................................................... 4, 13

*Elec. Privacy Info. Ctr. v. Dep't of Just.,*
15 F. Supp. 3d 32 (D.D.C. 2014) ............................................................................................. 9

*Farahi v. FBI,*
Civ. A. No. 15-2122 (RBW), 2022 WL 17338008 (D.D.C. Nov. 30, 2022) ............................... 7

*Freedom Watch v. Bureau of Land Mgmt.,*
325 F. Supp. 3d 139 (D.D.C. 2018) ......................................................................................... 7

*Harrington v. FDA,*
581 F. Supp. 3d 145 (D.D.C. 2022) .................................................................................... 3, 4, 7

*Jud. Watch, Inc. v. Dep't of Com.,*
Civ. A. No. 17-1283, 2020 WL 6939807 (D.D.C. Nov. 25, 2020) ............................................. 4

*Long v. Dep't of Homeland Sec.,*
436 F. Supp. 2d 38 (D.D.C. 2006) ........................................................................................... 8

*Middle E. Forum v. Dep't of Homeland Sec.*,
297 F. Supp. 3d 183 (D.D.C. 2018) ...................................................................... 3, 8, 9

*N.Y. Times Co. v. Def. Health Agency*,
Civ. A. No. 21-0566 (BAH), 2021 WL 1614817 (D.D.C. Apr. 25, 2021) .................................... 8

*Nat'l Res. Def. Council v. Dep't of Energy*,
191 F. Supp. 2d 41 (D.D.C. 2002) ........................................................................... 9

*Nat'l Sec. Counselors v. Dep't of Justice*,
848 F.3d 467 (D.C. Cir. 2017) ......................................................................... 7, 12

*Negley v. Dep't of Just.*,
305 F. Supp. 3d 36 (D.D.C. 2018) ...................................................................... 7-8

*Open America v. Watergate Special Prosecution Force*,
547 F.2d 605 (D.C. Cir. 1976) ......................................................................... 9, 12

*Protect Democracy Project v. Dep't of Def.*,
263 F. Supp. 3d 293 (D.D.C. 2017) ...................................................................... 12

*SafeCard Servs., Inc. v. SEC*,
926 F.2d 1197 (D.C. Cir. 1991) .......................................................................... 4

Defendant, the U.S. Department of Homeland Security ("Agency") respectfully submits this opposition to Plaintiff Heritage Foundation's ("Plaintiff") motion to compel in this Freedom of Information Act ("FOIA") case.

In short, Plaintiff has filed a motion to compel the production of 4,000 pages per month from the Agency (ECF No. 5). Given the overwhelming amount of FOIA requests the Agency is handling and the large number of FOIA cases presently in litigation involving the Agency, such a demand is burdensome and unreasonable and simply not feasible for the Agency. Because the Agency has many cases currently in litigation and Plaintiff's request is only one of many that the Agency is processing, advancing Plaintiff's request to the front of the queue would require the Agency to expend a disproportionate percentage of its finite and limited resources to simply benefit Plaintiff to the detriment of other FOIA requesters. Moreover, contrary to Plaintiff's assertion, it is quite uncommon for a Court in this District to order a production rate exceeding 500 pages per month.

## BACKGROUND

On January 10, 2022, Plaintiff submitted a FOIA request to the Agency seeking records related to Secretary Mayorkas's immigration priorities and communications concerning them, with reference to a September 30, 2021, release from the Secretary entitled "*Secretary Mayorkas Announces New Immigration Enforcement priorities.*" Compl. ¶ 30; *See also* Plaintiff's FOIA request, attached to the complaint as Exhibit 1, ECF No. 1-2. Plaintiff's request for expedited treatment was denied and the Agency is currently processing Plaintiff's request. *See* Declaration of Catrina M. Pavlik-Keenan, Deputy Chief FOIA Officer for the Agency's Privacy Office, ¶¶ 14-17, ("Pavlik-Keenan Decl.").

Plaintiff filed its complaint on August 3, 2022.  The Agency answered the complaint on September 16, 2022.  ECF No. 3.  The initial joint status report in this matter was filed on October 3, 2022 (ECF No. 4).  This report informed Plaintiff and the Court that the Agency's searches are ongoing, and that the Agency's usual processing rate given its workload and staffing issues is 300-500 pages per month.  (ECF No. 4 at 2-3.).  Shortly thereafter, on October 25, 2022, Plaintiff filed the instant motion to compel which attached close to 475 pages of exhibits and demanded the immediate processing of 4,000 pages per month.

 Because Plaintiff has demonstrated no legitimate basis on which to deviate from the Agency's reasonable and manageable processing rate, and since Plaintiff's requested relief would do nothing but advance Plaintiff's request to the detriment of others and impose upon the Agency, with its limited staff, an unwarranted and overly burdensome rate, the Court should deny Plaintiff's motion. To hold otherwise would harm other requesters, reduce the number of FOIA requests that the Agency can process, and risk disclosure of protected information exempted from release under FOIA.

Accordingly, the Agency opposes Plaintiff's Motion to Compel to require the Agency to process Plaintiff's FOIA request at a rate 8-14 times above its 300-500-page standard.  The Agency proposes that it process 400 pages per month in this litigation and anticipates that it should be able to issue its first release to Plaintiff by January 30, 2023 or earlier.  Pavlik-Keenan Decl. ¶17.

## ARGUMENT

The Agency's proposed production schedule is reasonable, and Plaintiff's demands are neither practical nor feasible.

The Agency's declaration describes the Agency's FOIA process, including its multiple and far-reaching responsibilities (¶¶ 5-11); explains the Agency's current resources and workload, and

includes statistics showing that the number of FOIA requests increased approximately 39.8% in FY 2022 compared to FOIA request totals from FY 2021 (¶¶ 8-10);[1] and sets forth the Agency's progress on Plaintiff's FOIA request and the factors that practically limit processing of records to 300-500 pages per month (¶¶ 6-11, 18). In sum, requiring the Agency to process 4,000 pages per month, as Plaintiff requests, would further burden the Agency's already strained resources, risk the inadvertent release of sensitive and FOIA-exempt information, increase the Agency Privacy's FOIA backlog to the disadvantage of other members of the public seeking information through the FOIA process, and unfairly prioritize Plaintiff's request over the many expedited requests that were received by the Agency prior to Plaintiff's request. (¶¶ 15, 18-23).  Further, a processing rate of 500 pages per month is routinely held as appropriate in this District.  Therefore, the Court should deny Plaintiff's motion.

I.     **The Court Should Exercise Its Broad Discretion in Favor of the Agency and Deny Plaintiff's Motion to Compel.**

It is well established that "[c]ourts have broad discretion to determine a reasonable processing rate for a FOIA request." *Harrington v. FDA*, 581 F. Supp. 3d 145, 150 (D.D.C. 2022) (citing *Colbert v. FBI*, Civ. A. No. 16-1790, 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018)). "Several factors inform the analysis, including the size and compelling need of the request compared to others, as well as the effect of the request on the [agency's] ability to review other FOIA requests." *Id.*; *see also Middle E. Forum v. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 185 (D.D.C. 2018) (observing that "courts in this Circuit have considered the effect of other FOIA requests when analyzing the burden on an agency of meeting deadlines for review and production of FOIA material in a given case"). "For instance, courts have looked to the volume of requests an

_____

1      All FY22 DHS FOIA statistics noted in this motion have not yet been finalized for the FY22 FOIA Annual Report.  In the interest of transparency, DHS is providing the best information currently available.

agency faces, how much requests to the agency have increased in recent years, the resources and capacity of the agency, other FOIA litigation in which the agency is involved, the agency's release policies, and how ordering swifter production would affect other FOIA requesters patiently waiting their turn." *Harrington*, 581 F. Supp. 3d at 150 (D.D.C. 2022) (collecting cases).

That said, "[w]hen determining the rate at which a federal agency must respond to FOIA requests, courts often give deference to the agency's release policies." *Colbert*, 2018 WL 6299966, at *3 (collecting citations). And, in assessing a proper processing rate, "[a]gency affidavits or declarations that are 'relatively detailed and non-conclusory' are accorded 'a presumption of good faith, which cannot be rebutted by purely speculative claims[.]'" *Jud. Watch, Inc. v. Dep't of Com.*, Civ. A. No. 17-1283, 2020 WL 6939807, at *2 (D.D.C. Nov. 25, 2020) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

The Plaintiff's request here is not reasonable nor feasible, and this Court can exercise its authority to supervise the agency's progress in processing the Plaintiff's request while ensuring that the agency exercises due diligence in doing so. *Citizens for Resp. & Ethics in Wash. ("CREW") v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013). The FOIA statute does not impose limits on a court's equitable powers in enforcing its terms. *Daily Caller v. Dep't of State*, 152 F. Supp. 3d 1, 8 (D.D.C. 2015). As evidenced below, those equitable powers should not impose an unreasonable processing rate on a resource strapped agency.

The Agency currently manages a massive number of FOIA requests and litigations. In recent years, FOIA requests to the Agency and FOIA litigations involving the Agency have increased tremendously. In fiscal year 2022, the Agency's Privacy Office received 74,698 FOIA requests, a 39.8 percent increase compared to fiscal year 2021. (Pavlik-Keenan Decl. ¶ 8). The Agency nonetheless processed 73,672 requests due to its diligence and hard work. *Id.*

The Agency processes FOIA requests on a first-in, first-out basis. Despite the increase in FOIA requests and resource constraints, the Agency makes its best efforts, in good faith, to process the voluminous FOIA requests it receives. Despite its best efforts, there was a backlog of 576 requests for fiscal year 2022, a 28 percent increase from fiscal year 2021. Had it not been for the Agency's diligence and hard work, the backlog would be considerably higher. *Id.*

Almost all the requests received by the Agency, including Plaintiff's, are characterized as complex requests. Thus, they require a wide-ranging search, across multiple offices, and involve a large number of records. *Id.* ¶ 9.

In addition to the burdens imposed by the large number of FOIA requests, the Agency is currently involved in over 130 active lawsuits, 49 of which were filed in fiscal year 2022. *Id.* ¶ 10. These include several other suits brought by the Heritage Foundation against the Agency in the recent few months seeking the immediate or expedited release of other tranches of records. *See, e.g., Heritage Found. v. Dep't of Homeland Sec.*, Civ. A. No. 22-1770 (CJN) (D.D.C. filed June 21, 2022), Compl. (ECF No. 1) at 48 (seeking to compel agency to produce all responsive records in 20 days); *Heritage Found. v. Dep't of Homeland Sec.*, Civ. A. No. 22-1969 (TJK) (D.D.C. filed July 7, 2022), Compl. (ECF No. 1) at 11 (same); *Heritage Found. v. Dep't of Homeland Sec.*, Civ. A. No. 22-3184 (CJN) (D.D.C. filed Oct. 18, 2022), Compl. (ECF No. 1) at 9 (same); *Heritage Found. v. Dep't of Homeland Sec.*, Civ. A. No. 22-3186 (CJN) (D.D.C. filed Oct. 19, 2022), Compl. (ECF No. 1) at 11 (same). As here, the Heritage Foundation argues that it should be moved to the front of the Agency's FOIA processing queue in certain of those cases too. *See, e.g., Heritage Found.*, Civ. A. No. 22-1969 (TJK), Jt. Status Rep. (ECF No. 12) at 2 (objecting to standard processing rate of Agency component); *Heritage Found.*, Civ. A. No. 22-3184 (CJN), Opp'n to Mot. to Extend (ECF No. 6) at 1-2, 4-5 (complaining that the Department of Justice has

allocated resources to hold those accountable for the events of January 6, 2021, and arguing that "given the exigency of the matter, Plaintiffs need the information *now*").

The Agency FOIA team members are not only required to respond to FOIA requests but have a multitude of other responsibilities. They are required to assist agency counsel in preparing answers to complaints, provide updates and edits to numerous status reports on a monthly basis, provide information in support of declarations and create templates for extremely complex and lengthy *Vaughn* indices. *Id.* ¶ 11.

The Agency's standard review rates for litigation work is to promote sound FOIA business practices by promoting the overall goal of responding to more requests each year across all requesters. By processing responses based on 300 to 500-page increments, the Agency is able to provide more pages to more requesters across many requests (both litigation and regular FOIA requests), and avoids a system where a few requests, such as the instant request, monopolize finite Agency processing resources. *Id.* ¶ ¶ 20-24.

The Agency has found that its standard litigation review rate capitalizes on the Agency's workflow to ensure that more pages for more requests get processed per month than otherwise would be. This number of pages per month per litigation in production has proven to be a manageable workflow for the Agency and maintaining this workflow ensures that the Agency can continue making efficient releases for each FOIA request that it is processing in light of the demands posed by the growing number, size, and complexity of FOIA requests received by the Agency. *Id.*

Accordingly, the 300 to 500-page review rate for litigation has proven ideal in maintaining the steady workflow of releases. Given the dramatically increased volume of the Agency FOIA requests and FOIA litigations in recent years and considering the Agency's requirement to ensure

that more requests are completed, application of the Agency's proposed 400-page per-month review rate to Plaintiff's request in this case is reasonable. Indeed, altering the Agency's standard processing to provide more information faster to Plaintiff will create an imbalance of the Agency's finite resources, which will take away resources for processing more requests, create delays and bottlenecking for other requests, and risk the disclosure of sensitive classified information if more workflow is required. *Id*.

Moreover, as courts in this Circuit have routinely held, a 500-page per-month processing schedule is a typical and reasonable schedule for processing records potentially responsive to FOIA requests. *See, e.g., Farahi v. FBI*, Civ. A. No. 15-2122 (RBW), 2022 WL 17338008, at *2 (D.D.C. Nov. 30, 2022) (noting 500-pages per-month FOIA processing schedule established over plaintiff's objection); *Harrington v. FDA*, 581 F. Supp. 3d 145, 150 (D.D.C. 2022) (agency policy of processing 500 pages per request per month "serves to promote efficient responses to a larger number of requesters") (quoting *Nat'l Sec. Counselors*, 848 F.3d at 471–72); *Chaverra v. Immigr. & Customs Enf't*, Civ. A. No. 18-0289 (JEB), 2020 WL 7419670, at *1 (D.D.C. Nov. 5, 2020) (concluding the standard 500-pages per-month FOIA processing schedule was reasonable and noting, "the explosion of FOIA requests and subsequent litigation has created a substantial workload for agencies"); *Daily Caller News Found. v. FBI*, 387 F. Supp. 3d 112, 121 (D.D.C. 2019) ("applying the FBI's usual processing rate of 500 pages per month" over plaintiff's objection); *Freedom Watch v. Bureau of Land Mgmt.*, 325 F. Supp. 3d 139, 142 (D.D.C. 2018) (applying agency's 500-page per-month release policy over plaintiff's objection; "[t]he agency has devised methods for allocating its finite FOIA resources between competing demands"); *Colbert*, 2018 WL 6299966, at *3 (ordering standard 500-page per-month production schedule; "The FBI adheres to that policy because it is based on sound FOIA business practice, promotes efficiency,

and allows the FBI to maintain proper information security. The policy also allows the FBI to process multiple complex requests simultaneously and meet litigation demands."); *Negley v. Dep't of Just.*, 305 F. Supp. 3d 36, 47 (D.D.C. 2018) ("The Court therefore agrees with the agency's assessment that its 'standard rate of 500 pages per month' would be appropriate were [plaintiff] to seek release of such documents."); *Middle E. Forum*, 297 F. Supp. 3d at 187 (concluding "500 pages per month is an appropriate rate of production" over plaintiff's objection).

Given the foregoing, the Court should find that the Agency's processing rate is reasonable and deny Plaintiff's Motion to Compel.

## II.    FOIA Does Not Require Production from Agencies Within 20 or 30 days

Plaintiff challenges the timeliness of the Agency's response on the grounds that FOIA requires agencies to issue a determination within 20 (or extended to 30) business days and produce responsive non-exempt records promptly thereafter. Mot. at 4.  However, the only consequence of an agency's failure to issue a determination within the 20-day statutory period, standing alone, is that the agency cannot rely on the administrative exhaustion requirement in the FOIA to keep a case from getting into court.  *See N.Y. Times Co. v. Def. Health Agency*, Civ. A. No. 21-0566 (BAH), 2021 WL 1614817, at *5 (D.D.C. Apr. 25, 2021) ("While agencies have 20 working days to 'make a determination with adequate specificity, such that any withholding can be appealed administratively,' . . . the consequence of agency delay in rendering such a determination bears only on the requester's ability to get into court," and, "[i]f the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court" (quoting *CREW*, 711 F.3d at 189)); *see also Am. Ctr. for L. & Just. v. Dep't of State*, 249 F. Supp. 3d 275, 283 (D.D.C. 2017) ("the sole penalty for mere procrastination is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court") (internal quotations omitted); *Long v. Dep't of*

*Homeland Sec.*, 436 F. Supp. 2d 38, 43 (D.D.C. 2006) (department's failure to comply with the FOIA statutory deadlines "does not establish plaintiffs' right to expedited processing").

Therefore, the remedy for missing the deadline is not to compel an agency to immediately process records, particularly at the egregious and burdensome rate of 4,000 pages per month, as Plaintiff suggests.  Further, it is well accepted in this District that "no federal agency can meet the impossibly rigorous timetable set forth in the statute."  *Nat'l Res. Def. Council v. Dep't of Energy*, 191 F. Supp. 2d 41, 42 (D.D.C. 2002).

**III.     Plaintiff is Not Entitled to this Extraordinary Relief**

Plaintiff has not demonstrated in its motion that it is entitled to the extraordinary relief it requests.  Indeed, the facts presented here warrant denial of the motion to compel.  Although the Agency is not seeking a stay of this case under *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), because the Agency is processing the request at issue, it is appropriate for the Court to consider the facts, circumstances, and practicalities facing the Agency's FOIA staff in evaluating Plaintiff's request for an immediate and burdensome production.  *See, e.g.*, *Middle E. Forum*, 297 F. Supp. 3d at 185 (courts in D.C. Circuit have considered the effect of other FOIA requests when analyzing the burden on an agency of meeting deadlines for review and production of FOIA material); *Elec. Privacy Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) (denying plaintiff's motion for preliminary injunction requesting immediate production of documents pursuant to FOIA request, weighing the effect an injunction would have on other FOIA requesters, and noting that agencies typically respond to FOIA requests on a "first-in/first-out" basis unless a requestor shows a compelling need for expedition).

Plaintiff offers an argument in favor of accelerating the Agency's processing rate that does not justify an order that would require the Agency to deviate from a reasonable processing rate.

9

The main thrust of Plaintiff's request for a processing rate of 4,000 pages per month is the notion that records related to Secretary Mayorkas's memo is a matter of national importance and the subject of a raging "hyper-partisan debate" about "open borders" and immigration policy (Mot. at 1-2) and may provide grounds for the impeachment of Secretary Mayorkas (Mot. at 25).

However, at its core, this case is no different from the other cases that the Agency is handling and certainly of no more importance.  The supposed matter of "national importance" in this case is contrived and does not warrant the imposition of a burdensome, impractical, and unreasonable processing request. *Daily Caller,* 387 F. Supp. 3d at 121 (denying Plaintiff's request for a 1,200 page per month production schedule in a claimed matter of critical media interest and relevance to ongoing current events, and instead ordering 500 pages per month per the agency's policy).

Under FOIA, the Court, while recognizing the public's need for documents to show what the Government is up to, must also be cognizant of the incredible strain and burden being placed on agencies such as the Agency.  The Agency's FOIA office has been inundated by increasing numbers of FOIA requests and litigation in recent years, on top of many other responsibilities. Keenan-Pavlik Decl. ¶¶ 7-11.  The Court in *American Center for Law & Justice v. Department of Homeland Security*, Civ. A. No. 21-1364 (TNM), 2021 WL 5231939, at *3-5 (D.D.C. Nov. 10, 2021), discussed the history and burdens of FOIA and noted that "[c]ourt dockets in this district overflow with [FOIA] matters.  Many of those cases seek reams of records, requiring massive efforts from defendant agencies" which require at times "Sisyphean effort to respond".  *Id.*  Non-profit FOIA plaintiffs are responsible for creating much of the backlog, some of whom the Court referred to as "frequent flyers." *Id.*

Such is the case here, indeed, from June 21, 2022, through October 19, 2022 alone, this Plaintiff has filed twelve FOIA lawsuits in this District, several of them against the Agency (identified above), including this case.[2]  Plaintiff has submitted numerous requests to the Agency over the last several years, and the Agency is currently expending significant and disproportionate resources on processing Plaintiff's various requests. Pavlik-Keenan Decl. ¶ 21.

In short, forcing the Agency to produce all requested records on an impracticably accelerated schedule raises a significant risk of harm to the public and privacy interests, which are served by the thorough processing of responsive agency records prior to their ultimate production. *Id.* ¶¶ 6-11, 8-24.  At the same time, Plaintiff's effort to accelerate review of its requests necessarily will displace in processing priority those of others who submitted equally urgent requests before the Plaintiff.  *Id.*  Balanced against these substantial interests, Plaintiff's bald reliance on its own interest in obtaining the sought-after records vis-à-vis the more generalized public interest in the disclosure of those records does little to distinguish the plaintiff's requests from just about every other time-sensitive FOIA request.

## IV.   Applying Plaintiff's Requested Processing Rate Would Be Detrimental to Other Requesters and the Public

The Agency is producing thousands of pages of records in response to multiple other FOIA matters and has more than 200 other open complex FOIA requests in its queue that were submitted prior to the request at issue here. *Id.* ¶15.   Devoting any more of the Agency's finite resources to Plaintiff's request would further reduce the already strained resources the Agency has available. For every resource devoted to processing records in FOIA lawsuits, fewer pages can be processed for requesters whose requests are pending at the administrative stage. Nonetheless, Plaintiff seeks

---

2       This information was gathered from Public Access to Court Electronic Records ("PACER") on December 7, 2022.

an order from this Court to increase the monthly processing rate to 4,000 pages per month. This 8-14-fold increase would divert resources from other requesters every month.   Were the Court to allow Plaintiff's motion, the Agency would have to divert resources directly away from hundreds of other requesters so that the Agency could process Plaintiff's request instead.  *Id*. ¶¶ 19-24.

Moreover, the increase processing rate will also adversely affect many other requests in an indirect manner. *Id.*   For all other responses, including those that predate Plaintiff's request, that the Agency is processing concurrently, the swell of additional pages processed for Plaintiff would run the risk of causing bottlenecks at the point of the process in which the Agency must consult with other agencies. *Id. ¶¶* 7-11, 22-24; *See Open Am.*, 547 F.2d at 612 (addressing the harmful effects to FOIA requests that predated the plaintiff's request).

This is especially the case here where, given the complexity of Plaintiff's FOIA request, the Agency will have to consult with other components and agencies who share equities in the Agency's records and must do so before it can release those records and while also continuing to process records each month. *Id. ¶¶* 22-24.  This bottlenecking will inevitably cause delay for the Agency's response to other requesters, *see Nat'l Sec. Couns.*, 848 F.3d at 471, and increase the risk of error in productions, not to mention the risk of releasing sensitive security information, to the public's detriment. *Id.* ¶19.  *See e.g. Protect Democracy Project v. Dep't of Def.*, 263 F. Supp. 3d 293 (D.D.C. 2017) (imposing arbitrary deadline "would run the risk of overburdening" agencies and "could even lead to the mistaken release of protected information"); *Daily Caller*, 152 F. Supp. 3d at 14 ("Requiring the agency to process and produce . . . materials under an abbreviated deadline raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA."); *Baker v. Consumer Fin. Prot. Bureau*, Civ. A. No. 18-2403 (CKK), 2018 WL 5723146, at *5 (D.D.C. Nov. 1, 2018) ("Ordering Defendant to process and release documents according to

Plaintiff's timeline risks that, in its haste, Defendant will inadvertently release records that fall under a FOIA exception and Congress has decided should not be released").

## **CONCLUSION**

For the above reasons, the Court should deny Plaintiff's motion to compel a processing rate of 4,000 pages per month and allow the Agency to proceed with processing 400 pages of records per month.

Dated: December 8, 2022                    Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK,
Chief, Civil Division

By:     */s/ Thomas W. Duffey*
THOMAS W. DUFFEY
Assistant United States Attorney
United States Attorney's Office, Civil Division
601 D Street, NW
Washington, DC 20530
Phone: (202) 252-2510

*Counsel for Defendant*

13